848 F.2d 185
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RENTAL TOOLS & EQUIPMENT CO. OF VIRGINIA, INC., Plaintiff-Appellant,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant-Appellee.
RENTAL TOOLS & EQUIPMENT CO. OF VIRGINIA, INC., Plaintiff-Appellee,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant-Appellant.
 Nos. 87-1500, 87-1506.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 3, 1988.
Decided: May 17, 1988.
 
 Robert Benton Baumgartner for Appellant.
 William Brown Bircher (Sarah E. Lister; Robert L. Polk; thomas B. Dorrier, on brief), for appellee.
 Before K.K. HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 This case arose after the Washington Metropolitan Area Transit Authority ("WMATA") orally agreed to rent four portable generators from Rental Tools & Equipment Co. of Virginia, Inc. ("Rental Tools"). Upon delivery, a WMATA employee signed a "rental agreement" containing various terms and conditions. After one of the generators was stolen, Rental Tools demanded payment based on terms in the rental agreement. At trial, the district court awarded Rental Tools the fair market value of the generator and prejudgment interest. Both parties appeal. We affirm.
 
 I.
 
 2
 In July 1985, a WMATA purchasing agent telephoned Rental Tools to inquire about renting four portable generators to provide reserve power at its stations. After receiving a price quote of $533.00 a month per generator, the agent agreed to rent four generators. Pursuant to the agreement reached by phone, Rental Tools delivered four portable generators on July 23.
 
 
 3
 One generator was delivered to WMATA's Grovenors Station in Maryland. Before turning over the generator, Herbert Fucchina of Rental Tools presented a "rental agreement" to be signed. The agreement contained a number of terms and conditions, including terms governing liability for loss of or damage to the generator. James Anderson of WMATA was worried about some of these terms and consulted his supervisor. His supervisor indicated that the terms had already been worked out and that he only was signing to accept the equipment. Anderson then signed the agreement and accepted the generator.
 
 
 4
 On September 5, the same generator was stolen from the Courthouse Metro Station in Virginia. It had been sitting in a lighted area about 100 yards from the station. Normal WMATA procedures call for such equipment to be chained down, and the police report indicates that the generator was chained. WMATA advised Rental Tools of the theft the next day. On September 11, Rental Tools demanded payment in accordance with the rental agreement signed by Anderson, which called for reimbursement of the replacement cost of the generator with continued rent payments until payment occurred. WMATA refused and offered to pay the fair market value of the generator.
 
 
 5
 At trial, the district court found that an oral contract was formed during the phone call from WMATA's purchasing agent to Rental Tools. The terms of the rental agreement signed at the time of delivery were not part of the contract. The court further found that WMATA was liable for the loss of the generator as a bailee because it failed to exercise due care. Judge Hilton entered judgment for the reasonable value of the generator (stipulated as $3,800), rent accrued before the theft of the generator, and prejudgment interest. Both parties appeal.
 
 
 6
 In its appeal, Rental Tools argues that the terms of the rental agreement, including provisions for payment of replacement cost and rent accruing between the theft and reimbursement, were part of its contract with WMATA. WMATA appeals the finding that it failed to exercise due care. It also argues that its sovereign immunity precludes an award of prejudgment interest.
 
 II.
 
 7
 Rental Tools and WMATA entered into a contract during the initial telephone conversation when WMATA's purchasing agent agreed to rent four generators at the price quoted by Wayne Stenabaugh of Rental Tools. The fact that Rental Tools subsequently delivered the generators indicates that an agreement was reached. Therefore, the terms of the rental agreement signed at delivery are not part of the contract unless the requirements for contract modification are satisfied.
 
 
 8
 The common law[1] of Virginia requires mutual intent of both parties to alter a contract before a modification is effective. See Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 306 S.E.2d 870, 872-73 (1983). WMATA did not exhibit the intent to agree to the additional terms of the rental agreement. Although a WMATA employee signed the agreement, he did so only after his superior told him that terms were already worked out and he was signing a receipt to receive the equipment, nothing more. Because of WMATA's lack of intent to modify, the terms of the rental agreement did not become part of the contract.
 
 
 9
 The Virginia courts also require that "the party asserting such modification must prove either passage of valuable consideration, estoppel in pais, or waiver of the right." Abramson, 306 S.E.2d at 873. Rental Tools provided no consideration to support the modification of their agreement with WMATA--it simply delivered the generators. Nor has it demonstrated the detrimental reliance required for estoppel, or an intentional waiver by WMATA. For these reasons as well, the rental agreement's terms are not part of the contract.
 
 
 10
 While conceding that the UCC does not apply to equipment rental, Rental Tools urges the court to analogize to its provisions, specifically Secs. 2-207 and 2-209(1).[2] Section 2-207 eliminates the need for a meeting of the minds before additional terms become part of the contract in certain situations, while Sec. 2-209(1) does away with the consideration requirement for contract modification. Because both provisions represent substantial departures from the common law, and Virginia continues to require mutual intent and consideration for modification in non-UCC cases, see Abramson, 306 S.E.2d at 872-73, we decline the invitation to analogize here.
 
 
 11
 The parties entered into a rental contract during their initial telephone conversation. The additional terms of Rental Tools' rental agreement are not part of that agreement because the mutual intent to modify the contract was not present, and Rental Tools provided no consideration in exchange for those terms.
 
 III.
 
 12
 Based on their rental contract, Rental Tools became a bailor, and WMATA became a bailee. As a bailor, Rental Tools can make out a prima facie case for the negligent loss of the generator by showing that it delivered the generator to WMATA and it was not returned. See, e.g., Canty v. Wyatt Storage Corp., 208 Va. 161, 156 S.E.2d 582 (1967). The bailee, WMATA, then has the burden to establish due care. Id.[3]
 
 
 13
 The district court found that WMATA failed to prove due care. As a finding of fact, it is subject to the clearly erroneous standard of review. Anderson v. Bessemer City, 470 U.S. 564 (1985). The portable generator was kept outside in a lighted area, about one hundred yards from the metro station. A police station was nearby. The police report indicates that the generator was chained down, but the WMATA employee who reported the theft, Eddie Gregg, testified only that the normal procedure was to chain it down. Given the portable nature of the generator and the failure to show that this particular generator was chained down when it was stolen, the finding of a lack of due care is not clearly erroneous. Therefore, WMATA has not rebutted the prima facie case and is liable for the reasonable value of the generator.
 
 IV.
 
 14
 Although its governing compact allows it to sue and be sued, WMATA argues that it has sovereign immunity from awards of prejudgment interest. George Hyman Construction Co. v. Washington Metropolitan Area Transit Authority, 816 F.2d 753 (D.C.Cir.1987). WMATA waived the defense of sovereign immunity, however, by failing to raise it in the district court. See United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir.1976). Therefore, we do not reach WMATA's defense of sovereign immunity.
 
 V.
 
 15
 WMATA contracted with Rental Tools to rent four portable generators, creating a bailment relationship. Because one generator was stolen, WMATA, as bailee, is liable for its reasonable value absent a showing of due care. WMATA failed to show due care. Therefore, the district court's judgment for the reasonable value of the generator and prejudgment interest is
 
 
 16
 AFFIRMED.
 
 
 17
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 18
 I concur in that portion of the majority's opinion which affirms the district court finding that WMATA failed to exercise due care. I also concur in that portion finding that sovereign immunity does not preclude an award of prejudgment interest. I cannot agree, however, with the majority's conclusion that the terms of the Rental Agreement were not part of the contract.
 
 
 19
 In my view, the district court erred when it held that there was only an oral contract between Rental Tools and WMATA. An oral contract was not formed because the terms were uncertain and the parties clearly relied on the rental contract to set the terms and conditions of the rental.
 
 
 20
 Moreover, the parties regularly treated the written Rental Agreement as a valid contract. WMATA signed fifteen other Rental Agreements and never indicated any problem with the terms until demand was made to reimburse Rental Tools for the lost generator. Although Anderson had reservations about signing the Rental Agreement, he was told by a supervisor that it was all right to sign it. This does not indicate that there was no meeting of the minds, but rather that it was normal course of business between two parties. Therefore, Rental Tools should be allowed to collect under the terms of the contract.
 
 
 21
 For the foregoing reasons, I would reverse the district court and remand for an entry of judgment in favor of Rental Tools based upon the terms contained in the Rental Agreement.
 
 
 
 [1]
 We look to the common law because equipment rental is not covered by Article Two of the UCC
 
 
 [2]
 The Virginia provisions read:
 Sec. 8.2-207. Additional terms in acceptance of confirmation. (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
 (a) the offer expressly limits acceptance to the terms of the offer;
 (b) they materially alter it; or
 (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
 (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.
 Sec. 8.2-209. Modification, rescission and waiver. (1) An agreement modifying a contract within this title needs no consideration to be binding.
 
 
 [3]
 The Virginia cases distinguish bailment actions in tort from those in contract. In a tort action, the bailee has the burden of going forward with evidence of due care, but the bailor retains the ultimate burden of proving negligence; in a contract action, the bailee has the burden of proving due care. See Revenue Aero Club v. Alexandria Airport, 192 Va. 231, 64 S.E.2d 671 (1951). The instant case is a contract action because (1) it is based on the rental contract, and (2) the complaint alleges a breach of contract. Therefore, WMATA, as bailee, has the burden of proving due care